May it please the court. Mr. Castelo-Palma was convicted of moving seven people who were in the United States illegally in a Ford SUV. He was sentenced under an excessive guidelines range because the district court erroneously applied the risk endangerment enhancement under section 2L 1.1b6. This court has interpreted that guideline as using restrictive language. We don't examine just simply a risk of harm, but a substantial risk of death or serious bodily injury. It's a fact-intensive analysis and the lower court in this case applied it based on one bare fact. The SUV had a rating capacity of seven and a total of nine people were inside. You said it's, I heard the word fact just a moment ago and the two sides here dispute what is our standard of review. Is this a determination that really goes to fact-finding by the district court? I find that a very close question. Why don't you articulate what I read in the brief. Make another run at me. Yes, your honor. The fact, the factual finding by the district court was the rating capacity of the car. It was seven compared to nine total people. At no point is that fact disputed. It's that that fact isn't sufficient to raise to the legal standard articulated in the guideline. Isn't the dangerousness of it a fact? The risks that it creates a fact? Yes, if we look at Rodriguez, that court, that case would be very instructive for resolving it. I suppose if it were a fact issue, in which case there is not sufficient evidence on this record to reflect a finding of dangerousness. It was the government's burden at sentencing to produce that evidence and none was produced. The government relied solely on the fact that it was a fact and none was produced. The government relied solely on the representation in the PSR, which was that the rating capacity was seven and there were a total of nine people. Do you have a case here on this argument because it's only two over the capacity, if it were four or five, whatever? Sure. Do you start to drift away on it, on your argument or on your sense that this is a disputable fact? I certainly apologize if it appeared that I was drifting away from the argument. I come up with words that don't really apply to how you argue. Excuse me if it's just otherwise. Solis-Garcia is an excellent example. That was a minivan rated for seven and there were a total of eight people. The arrangement, the issue raised before the court was whether four people riding in the cargo area created a substantial risk of death or serious bodily injury. The back seat had been removed. This court articulates even if the seating capacity was four, meaning four people had a seat and four people did not, that fact did not rise to the level contemplated by the guideline. That's Solis-Garcia, which has been affirmed in its reasoning repeatedly. Zuniga Amiskita repeated again that simply riding in a car without a seat or seat belt does not rise to the level of substantial risk contemplated by the guideline. Would the lack of a seat belt plus the increased capacity rise to the level? Not based on this court's case law. In a whole line of cases, Solis-Garcia, Zuniga, Amiskita, Torres, Rodriguez, we have some combination of a few people who are traveling in a car without a seat or access to a seat belt. And Zuniga Amiskita is the only case of those four that I just cited that held that the enhancement was appropriately applied. But that's because there were aggravating factors. Is that the one with the boxes? Yes. That basically trapped people? I mean, that wasn't really a capacity issue. That was that they were sort of locked in by luggage and boxes, right? Correct. And not just boxes, but heavy boxes, many of which were filled with beer bottles. And so the court articulates, we've got to look at this beyond what the risk is absorbed by the ordinary person traveling in a car without a seat belt. That's ordinary risk any person might undertake in the course of traveling from A to B. The guideline contemplates something much more, a substantial risk of death or serious bodily injury. And without those aggravating factors, which is evidence the government had the burden of producing at sentencing, it was error to legally apply this guideline. So to get back to your question, Judge Southwick, it's— I didn't know you had left my question. Well, I'll come back to it. To the extent there is any factual dispute, it's because there's an absence of fact based on an absence of evidence that the government had the burden of presenting. Under your view of how this should work, what should your friend on the other side or whoever handled it in trial have done to show the dangerousness? Let's say that if nine people in this particular vehicle could have been dangerous, what would the government have needed to do to show that? Well, Rule 32 is alive and well, despite it not always being exercised at sentencing. And the party supporting the movement of the guideline—in this case, it's the government supporting an enhancement—has the burden of producing evidence. And the court can hear witnesses and hear a presentation of evidence like any other evidentiary hearing. The government cites Diaz-Lira, which is an unpublished case, but that's a really good example of what could have happened. There was actually a full-blown hearing where witnesses appeared and gave testimony about not only the circumstances of the car, the arrangement of the passengers, but also testified to their experiences and the various risks and dangers. So there was actually a robust evidentiary record in that case that took place at sentencing. And that's what didn't happen in this case. It was simply the adoption of a guideline enhancement based on two people over this rated capacity for the vehicle. Counsel, if it's a clear error standard of review, if we're reviewing for facts and there aren't sufficient fact findings, what's the remedy? Do we send it back or is it just a reversal or vacating the enhancement? The court, as I understand it, applies a two-part test when reviewing. Any dispute of fact is clear error. If there is a lack of fact, the court also looks at a de novo application of the guideline in a legal capacity. So if there's an absence of fact, that absence won't raise that legal standard of the guideline. It is not the case that the government gets a second bite at the apple for a burden that they had in the very beginning at sentencing. Both Torres and Solis-Garcia decided on undisputed facts. Rodriguez certainly went through a more factually intensive analysis to say there's insufficient facts for the application of this guideline. And we vacate the sentence and remain consistent with our opinion. I think that means that Mr. Costello-Palma was sentenced in error under excessive guideline range and he needs to be resentenced without application of the guideline enhancement. So we would basically vacate and remand with instructions? Yes. Or consistent with your opinion if you find that true to the court's precedent, two people over rating capacity absent aggravating factors does not warrant application of the guideline. Anything else, counsel? I think you have the argument and I reserve my time. Thank you, Mr. Davidson. You'll have five minutes on rebuttal. Good afternoon. May it please the court. Richard Durbin for the United States. I think what this case presents, the district court did not spend a lot of time making factual findings. There was, as counsel points out, there was one basis that was identified in the pre-sentence report. But there was a fair amount in the record that I think supports the district court's application of the guideline in this case. It's a 19-year-old who was the driver without a license in a 17 or 18-year-old car that had nine people in it that was rated occupancy of seven. According to the pre-sentence report, some of those who entered the car were told to lie down. So I think it follows from the record that some of them may have been seated. Some of them may have even been strapped into seats. But we don't know. We don't know that. There weren't any findings. But we know that they couldn't all have been belted in seat belts because they exceeded the occupancy rating. And some of them said they were told to lie on the floor. Well, it's not the same thing as saying they did lie on the floor once they got inside. I mean, the problem with this case is not the absence of fact-finding so much as an absence of facts. We don't know what it was like inside the vehicle, correct? We know the dimensions of the vehicle and seating capacity. But we don't know where people were and whether it was more or less dangerous than we could contemplate putting nine into a seven-person vehicle. It's just sort of guesswork. Well, and I think the court's cases, and I went back and looked at them The guideline says that it applies if the circumstances create a substantial risk of death or serious bodily injury to another person. And then it gives examples of, and one of those is sort of the circumstances here, if carrying substantially more passengers than the rated capacity of a vehicle. I don't think I can argue to you that there were substantially more passengers at least as I think this court and other courts have looked at that factor. Well, I thought you were going to argue that. Well, no. That's substantial. Well, I mean, I I think it's a losing argument. I know, and I don't think it is. Because I think what, in Kyler, which was a pickup truck bed, this court cited some cases from the 8th and 9th Circuit that involved overcapacity. And the overcapacity, as I calculate those, were 100, one was 64 percent, one I think was 166 percent overcapacity. Diaz-Lira was 100 percent overcapacity. I think under those circumstances we could make an argument that the guideline applies without regard to all of the factors. I don't think we're in that case, and I'm not suggesting we are. Let me ask you this to respond to my simplistic view. This is a seven-passenger vehicle. There are nine in it. Yes. We don't know where they were. We don't know where they were seated. We don't know how many were in seat belts or how they were restrained. So how can we determine whether there is a substantial risk of harm to the individuals? We just don't have the evidence. So disabuse me of that. It's 28 percent overcapacity by my calculation. That's what it comes out to. It's not quite a third, but that's overcapacity. And I think common experience tells us that when you've got that many people in this vehicle, they're not all strapped in. There is a danger. And there are other circumstances. It was at night. It was a 19-year-old. And I'd point the court to that case. I think it's pronounced Leighton, L-U-I-T-E-N. It involves the 81-year-old pilot who was carrying five people in a four-seater airplane. And his license had been revoked. And the court was concerned in that case, although it was only 20 percent overcapacity, the court looked to what I think basically is the risk of an accident occurring because of the characteristics of the driver. And I'm sensitive to ageism, but I would say that a 19-year-old is sort of at the opposite end of not very good judgment. It didn't have a license. The people who hired him, the cartel said, find somebody with a license to drive. And that wasn't because I don't think. That was because they were worried about whether or not he'd get ticketed for driving without a license. With respect, isn't there a pretty good distinction between being qualified to fly an airplane and being qualified to drive a vehicle? Yeah, there's a distinction, but I don't know. The dangerousness level seems to be quite heightened. It is, but I would point the court to, and I think that what I see in the cases is there's sort of, there's two functions here. One is a risk of an accident occurring. And where there's just some sort of regular routine risk of an accident occurring and it's not substantially overcapacity, this court has said that if there's basically similar to a passenger in a vehicle without seatbelts, that does not meet the standard for this guideline. But if, and I think what Leighton stands for, is if there are circumstances that increase the likelihood of the accident, that that's one consideration, because if it's more likely there's going to be an accident, it's more likely that people are going to be hurt in this scenario. And so the scenario has a risk of danger, but it puts it beyond this court's ordinary case of just a passenger without a seatbelt, that you're increasing the risk of the accident itself. And I would also suggest, and it's not really suggested in the courts, but Judge Counts is familiar with this. This was a case that arose in Presidio. It's on the border with Mexico, right across from Ohinaga. The circumstances of these kinds of transports are more likely to be apprehended along the border. And the occupants know that. They're all engaged in, or they're all here without legal basis. They're trying not to get caught. And so, and I say it, on a 19-year-old who doesn't know how to drive very well, the pressure of avoiding getting caught in that border circumstance enhances the risk of there being an accident. And then if you've got an over, if you've got an over-occupied car, well then you've got an additional danger from that. That's the risk of injury. But is all that in the record? What do we know, what do we know about the 19-year-old? He wasn't a very good driver? We know that he was 19. We know that he did not have a license. And we know that, according to him, the cartel told him find somebody else to drive it who does have a license. And whatever inferences you can draw from that. I would draw inference. The inference that he's not a very good driver is not, to me, one that we could draw without evidence. A lot of people may be driving for years without bothering to get a license, particularly if they're in the transport business that this fellow was in. Sure, but they're not 19-year-old males. Well, but again, you're asking us to speak. Who are engaged in criminal activity on the border in an area where there's a high likelihood of getting caught and he's trying not to get caught. And so, those are the circumstances. I mean, I wish I could tell you that there was 15 people in a seven-person van, but there wasn't. And I don't think this falls into that category. It seems to me that if we allow this here, and again, I'm floating this so you could help me with it. If we allow this here, there really are, I think this would be the narrowest excess, the most limited excess over the capacity of a vehicle that has ever been held to create a substantial risk of the kind of necessary danger. And it seems to me we're getting down to maybe a 19-year-old driver is enough. I mean, I really do think this is an enhancement that requires considerable enhancement of the risk. And you have a difficult case? I think that's right, Judge, and I think that the question is, if you look at these circumstances, 19-year-old, no license, it's over-occupied, it's at night, it's an old car, it's a 17, 18-year-old car, and it's very close to the border where there's a high risk of apprehension. The question is, under those circumstances, was the district court wrong in saying these create a substantial risk of possible death or serious bodily injury? It's a close case. What's our standard of review? Well, I think it's a question of the application of the court's law, the legal standards, to the evidence that's in the record. That's de novo, right? I think that's de novo, Judge. But this is not one of those standards. I'm not going to profess that I feel terribly comfortable with those things because they kind of blend into each other. I mean, I don't think there's a whole lot of dispute as to what is in the record as to what these facts are. I think that the issue is, or what this evidence is, the issue is, does this meet the standard for a substantial risk of death or serious bodily injury? And I think that's, at the end of the day, that's a legal standard that you will apply. And that's how I read Garza. I'm sorry? Garza. The Garza case seems to differentiate between the fact findings and the application of the guideline to the facts. I think so, and I think that from the context of other guidelines that have similar type circumstances where it's not so much the... I won't say facts because these haven't been found, but the information, the evidence that's in the record and whether or not they meet the legal standard. And I think that Mr Costello did preserve that in the district court. I mean, he was arguing whether or not the circumstances in the record satisfy that standard under the guideline. But I think you can affirm it. I don't think it's drawing a line in the sand. I don't think it's the last circumstance. Because as this court has said, you do this on a fact-intensive, case-by-case basis. And so I looked at all of these cases trying to figure out, okay, is there some commonality here? Well, it's interesting, Rodriguez did not involve overcapacity at the end of the day. As I read Rodriguez, the presentence report said there were 8 people in it, but at the end of the day, the district court found from the agent reports there were only 5, and the vehicle was rated for occupancy of 5. And so Rodriguez doesn't really answer it either. And so that's what I'd submit to the court. All right, counsel. Do you have any questions? Otherwise, I'll give you my time. Thank you. Is there any help? Thank you, sir. Ms. Davidson? In, uh... You have 5 minutes only. I'm sorry? I just reminded you you have 5 minutes. Thank you. Thank you, Your Honor. Rodriguez actually was carrying... The court considered 5, but there were a total of 6 with the driver, so there was one over in Rodriguez. As for the difference between disputed facts and findings of law, I actually think in Solis-Garcia, where they're describing the 9th Circuit Dixon case, it provides an excellent example of the type of factual dispute that would warrant clear error. And the court... The district court applied the enhancement finding that the undocumented individuals were transported in a trunk when, in fact, it was a hatchback. That's the type of fact dispute that gets deference from the court. I think also in Rodriguez, these broad characterizations, such as overcrowded, that's a characterization, that's an adjective, that the court... That there has to be evidence on the record to support. That overcrowding characterization actually appears for the first time in this case in the government's response brief. Overcrowding is not a characterization that the probation officer uses. It's not a characterization that the district court found. It's not... There's not evidence that the government presented that the car was overloaded. I don't quite understand what you're saying. They did indicate it was over capacity, so what's the distinction you're making? I think overloaded, in a technical sense, goes to a car's payload. Weight? It's how much total weight a car can carry. For an SUV, it's quite high. They're made to carry more weight, pull heavy machinery, so on and so forth. What about the point he was making about this dilapidated old vehicle? He didn't use that word, and I'm playing with it just a bit. Is that a factor as well? It doesn't seem we know about that either. We are looking at extreme dangerousness. If this was not a well-maintained vehicle, elderly... I'm sensitive to that. He said ageism. How does that fit into the analysis? Well, I think we have to be very careful about what's fact and what's characterization. The fact is that it's a 2003 vehicle. There's no fact as to its maintenance record. There's no fact as to how it appeared, how it was maintained, how it was driving. The only thing we know about it is that the light above the license plate was out. That was the sole basis of pulling the car over. It may have been intentional maintenance to not have the license plate lit, but who knows? What would you say we know from the record about the situation with the vehicle and the people inside? What is in the record that would tell us anything about that? We know the number of people. We know the capacity of the vehicle. What else do we know? We know who was driving. We know who was driving. We know who was... the co-defendant was in the passenger's seat. But that is really the only characterization. We don't know where anybody else was. We don't know how they were situated inside the vehicle. The court... I'll direct the court to Paragraph 5 of the record is the paragraph that the PSR cross-references in its application. We have a few interviews of the undocumented individuals, but we don't know dates they were picked up. We don't know who was picked up, when, and where. We don't know how they were seated. We don't know how they were arranged in the car. That's what I'm asking. We don't know any of that. We don't know. Can you add anything to that, that we know from this record about the inside of that vehicle with the people in it? Not on this record, Your Honour. The factual basis that Mr Castello-Palma pleaded guilty to is summarized in the same paragraphs that are set forth in the PSR, and there is just no evidence that was presented about any of these conditions that could give rise or support to characterizations that result in substantial risk. If I may, one quick point, Your Honour. It's up to our presider. Go ahead. I just want to point out the Kylar case is very clear that it's not about comparing harm between cases, but the facts or the absence of facts that the case may be in this particular case. So we ask that the sentence be vacated and remanded for resentencing without the enhancement. Thank you. Thank you.